UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARTHA L ANGLIN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-10-2082 |
| § | |
| CERES GULF, INC., *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Pending before the Court is Plaintiff Martha L. Anglin's ("Anglin") application for preliminary injunction, first filed in the 269th Judicial District Court of Harris County, Texas on June 2, 2010, in Cause No. 2010-34291 (Doc. 1-2), as well as Defendants Ceres Gulf, Inc.'s ("Ceres") and NYK Group America, Inc.'s ("NYK") responses (Docs. 17 and 18, respectively). The case was removed to federal court on June 14, 2010. The Court held a preliminary injunction hearing on August 31, 2010. (Doc. 19.) Upon review and consideration of this motion, the responses thereto, the relevant legal authority, the testimony heard, and the evidence presented at the hearing, and for the reasons explained below, the Court finds that Plaintiff's application for temporary injunction should be denied.

I. Background and Relevant Facts

This is an employment contract dispute in federal court pursuant to a multiemployer collective bargaining agreement. 29 U.S.C. § 185. Plaintiff Anglin is a union member and worked pursuant to a collective bargaining agreement. Anglin started working as a "regular" employee for a "direct employer," Ceres Gulf, in August 2004 in the position of shipping clerk. As a regular employee Anglin was guaranteed a forty-hour work week and was paid for vacation

and holidays.  In the summer of 2009, within a five week period, Anglin suffered three instances of work related illness that required that she be transported by ambulance to the hospital.  On September 1, 2009, Anglin was released to return to work with medical restrictions, "Minimize exposure to the heat and sun.  Heat and sun may increase blood pressure."  Defendants' Exhibit 39.   Thereafter Anglin, Ceres, and the Union engaged in negotiations to determine how to implement the medical restrictions necessary for Anglin to resume work.   See Defendants' Exhibits 40, 42, 45, 51, and 54.  On November 1, 2009 Ceres's representative sent Anglin and her attorney an email, which outlined the kinds of jobs she could perform that were within the medical restrictions.  The email then recited

> Because these jobs are limited in number, the direct employer cannot guarantee 40 hours per week to Ms. Anglin.  However, they agree to accommodate Ms. Angliln by allowing her to also work off the Hiring Board through the Hiring Hall maintained by Local 1351 in order to potentially work more hours.  She will be given jobs with Ceres/Houston Terminals whenever a job is available in a [sic] one of the above-listed position [sic] for which she is also trained and qualified to work and will only be paid for hours actually worked.

Defendants' Exhibit 63

Ceres representatives testified that this email was an indication to Anglin that she was no longer considered by Ceres as a "regular" employee because she would not be guaranteed forty hours work per week.  See also Defendants' Exhibit 67.  In earlier correspondence with Anglin, sent October 15, 2009, Ceres's representative had stated

> If you believe that there is some reasonable accommodation that will allow Ms. Anglin to perform the essential duties of the regular clerk jobs at Ceres, please let us know at our meeting scheduled on October 20, 2009 at 9:15 am.  In the event she cannot perform the essential duties of a regular clerk job with or without a reasonable accommodation, Ceres will release her as a regular clerk, allowing her to work off the board.  As a clerk working off the board, Ms. Anglin will be able to take jobs that are indoor jobs from all employers, including Ceres, consistent with her doctor's medical

        restrictions.
Defendants' Exhibit 55

The parties actually met again on October 29, 2010, and Anglin presented another note from her doctor:

> To whom it may concern,
> It appears that my release is being misconstrued.  In releasing Ms. Anglin I reviewed the job descriptions provided and determined that from a medical point of view she should work the indoor jobs.  I understand that even the indoor jobs may require her to work outside for up to two hours.  Ms. Anglin has also explained that even during the two hour period relief is available if necessary.  Based on all the information provided, I released Ms. Anglin to return to work in one of the indoor jobs.

Defendants' Exhibit 62

The following November 1, 2009, Ceres's representative sent the email, referenced above, that released Anglin from "regular" employment from Ceres.  Defendants' Exhibit 63.

Despite the clear implications of the November 1, 2009 email, in light of all that had gone before, Anglin continued to maintain that she was a regular employee with Ceres.  Her attorney sent an email to Ceres's representative on November 9, 2009, which stated, "Pursuant to Ms. Anglin's employment contract with Ceres, she is guaranteed 40 hours a week. . . . I have been advised that Ms. Anglin was allowed to return to work today in a position that violates the release from her doctor and the 'agreement' that she would only be placed in a position that does NOT require her to be outside for an extended period. . . . [T]he doctor's release. . . clearly states that she should ONLY be placed in the indoor positions."  Defendants' Exhibit 64.

For a time after November 2009 Anglin testified she worked approximately thirty to forty hours per week, in some weeks, but she was not consistently called for forty hours work per week.  She testified that since March 30, 2010 Ceres has not called her to work any hours.  Defendants' Exhibit 69 reflects that from the period September 18, 2009 to August 19, 2010, her

last work for Ceres was nine hours the week ending April 9, 2010.

To maintain her yearly seniority and health insurance benefits, Anglin testified she must work an annual average of thirty hours per week. As a regular employee, Anglin cannot accept work "off the board" as that will automatically terminate her contract as a regular employee. Anglin asks for a temporary injunction ordering Ceres to put her back to work as a regular employee according to the terms of the collective bargaining agreement. Without such an order, Anglin testified, she will be forced to accept work "off the board" and thus forfeit all rights and benefits guaranteed by her regular employment contract.

II. Standard of Review

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood that the party will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the nonmovants; and (4) granting the preliminary injunction will not disserve the public interest. *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 363 (5th Cir. 2003); *City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983). An injury is irreparable for purposes of granting preliminary injunctive relief only if it cannot be remedied through a monetary award after trial. *Speigel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981). A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has "clearly carried the burden of persuasion" on all four elements. *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

III. Discussion

Anglin acknowledges that she worked for Ceres under a collective bargaining agreement ("CBA"), which provides a process, called the grievance procedure, for resolution of disputes between longshore workers and their employers. As outlined above, Anglin has a dispute with Ceres over, among other things, whether she is a regular employee entitled to a minimum of 40 hours of work per week. Before filing a lawsuit, a plaintiff "must at least attempt to exhaust the grievance and arbitration procedures established by the bargaining agreement." *Ross v. Runyon*, 858 F. Supp. 630, 634 (S.D. Tex. 1994) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). Anglin has not established that she used the grievance procedures to resolve her dispute with Ceres. While the Labor Management Relations Act, 29 U.S.C. § 141, does permit actions between labor organizations and employers to be heard in federal court for alleged violations of a CBA, if that agreement contains grievance or arbitration provisions, the employee must attempt to exhaust them and is bound by the finality provision of the agreement, subject to limited judicial review. *Smith v. Kerrville Bus Co., Inc.*, 748 F.2d 1049, 1053 (5th Cir. 1984) (citing 29 U.S.C. § 185; *Republic Steel*, 379 U.S. at 652). Without first exhausting those procedures provided for in the CBA, "an aggrieved employee whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for breach of the collective bargaining agreement, or to attack in court the results of the grievance process." *Ross*, 858 F. Supp at 634 (citing *Acuff v. United Papermakers & Paperworkers*, 404 F.2d 169, 171 (5th Cir. 1968)). Because Anglin has failed to grieve her dispute with her employer she has no standing to pursue a lawsuit. It follows that she cannot show that there is a substantial likelihood she will prevail on the merits, the first element required for a temporary injunction to issue.

IV. Conclusion

Accordingly, the Court hereby ORDERS that Plaintiff Anglin's application for temporary injunction (Doc. 1-2) is DENIED.

SIGNED at Houston, Texas, this 3rd day of September, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE