IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARTHA ANGLIN** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | |
| | § | NO. 4:10-CV-02082 |
| **CERES GULE, INC., NYK GROUP** | § | |
| **AMERICAS, INC., THOMAS J. SIMMERS,** | § | |
| **RONALD N. RUTOLO AND** | § | |
| **WAYNE KOCUREK,** | § | |
| **Defendants** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, complaining of the Defendants, avers:

### JURISDICTION AND VENUE

1.  This case was removed from State Court and Original Jurisdiction was invoked pursuant to 28 U.S.C. Section 1331 & 29 USC section 185. This Court has pendant jurisdiction over Plaintiff's State Claims.

2.  Plaintiff also invokes the jurisdiction of this Court pursuant to 28 U.S.C. sections 1331 and 1343(4) and 42 U.S.C. section 2000e-5(f). This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sections 2000e, et seq. ("Title VII") and the common law.

3.  The unlawful employment practices alleged in this complaint were committed in Harris County in the Southern District of Texas.

### PARTIES

4.  Plaintiff, Martha Anglin, is a female citizen of the United States of America and a resident of Galveston County, Texas.

5.  Defendant, Ceres Gulf, Inc. ("Ceres"), is a corporation that on or about July 25, 2008, forfeited its charter/certificate and/or registration pursuant to Section 171.309. Ceres charter was reinstated after the State Court Action was commenced but before this matter was removed to Federal Court.

6. Ceres is an "employer" within the meaning of section 701(b) of Title VII in that it engages in an industry affecting commerce and has employed more than the requisite number of persons for the requisite duration under Title VII.

7. Defendant, NYK Group Americas, Inc., is a foreign corporation and under information and belief is the sole shareholder of Ceres and therefore is the successor in liability due to Ceres Gulf, Inc.'s forfeited status at the time most of the actions complained of occurred and due to the forfeited status at the time that the State Court action commenced.

8. Defendant Thomas J. Simmers is an individual residing in New Jersey and is a director of Ceres Gulf and is a liable party due to Ceres Gulf forfeiting its charter on or about July 25, 2008.  Upon information and belief, Defendant Simmers was served in the State Court Action by certified mail return receipt requested at his mailing address of Two Tower Center Bulevard, East Brunswick, NJ 08816.

9. Defendant Ronald N. Rutolo is an individual residing in New Jersey and is a director of Ceres Gulf and is a liable party due to Ceres Gulf forfeiting its charter on or about July 25, 2008.  Upon information and belief, Defendant Rutolo was served in the State Court Action by certified mail return receipt requested at his mailing address of Two Tower Center Bulevard, East Brunswick, NJ 08816.

10. Defendant Wayne Kocurek, is an individual who resides in Harris County.

11. West Gulf Maritime Association is an association organized and existing under the laws of the United States of America, is qualified to do business in Texas and does business in Harris County under the name West Gulf Maritime Association ("WGMA").

12. WGMA is the association charged with representing all the employers under the Collective Bargaining Agreement ("CBA") with the International Longshoremen Association.

13. ILA 1351 is the local union that represents its members under the CBA and does business in Harris County Texas.

14. ILA South Atlantic & Gulf Coast District ("ILA SAGCD") is the district union that overseas the local union and works with Defendants ILA 1351 and WGMA in the grievance process and does business in Harris County Texas.

## ADMINISTRATIVE PROCEDURES

15. Plaintiff timely filed a charge of discrimination against the Defendant Ceres with the Equal Employment Opportunity Commission ("EEOC") on or about January 23, 2009.

16. On or about July 8, 2010, Plaintiff received from the EEOC a "notice of right to sue" entitling her to commence this action within 90 days of her receipt of that notice.

17. Plaintiff timely filed a charge of discrimination against the Defendant WGMA with the Equal Employment Opportunity Commission ("EEOC") on or about January 23, 2009.

18. On or about July 2, 2010, Plaintiff received from the EEOC a "notice of right to sue" entitling her to commence this action within 90 days of her receipt of that notice.

19. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## BACKGROUND

20. The Plaintiff is a Union Member and works pursuant to a Collective Bargaining Agreement as a regular employee of Defendant Ceres Gulf. Plaintiff has been employed as a regular employee since August of 2004 as a Computer Ship Clerk (Defendant Ceres refers to her position as "Ship Clerk, computer qualified.").

21. In the Fall of 2008 Plaintiff was identified as a witness in a Title VII complaint against Defendant Ceres. After learning that Plaintiff was a witness, Defendant Ceres Gulf, demoted Plaintiff and even though she had performed the duties of Clerk in Charge ("CIC") and clerk working ship for a number of years, Defendant Ceres Gulf unilaterally determined that Plaintiff was no longer qualified to perform as a CIC or clerk working shop. Other terms and conditions of her employment were also altered. Additionally, Plaintiff was not given the same hours as similarly situated males and less senior employees were given more privileges. Plaintiff was subjected to such a hostile environment that her health and well being were put at risk. She was ignored, and not provided the relief that her male counterparts and those who were not a witness to Title VII violations.

22. Pursuant to the CBA the chief clerk contacts the Union to order workers for the next day and based on the Union Hall's Hiring Rules the Union sends workers to the

employer (This is commonly referred to as "working off the board."). However, as a regular employee, Plaintiff was contacted directly by the Chief Clerk, Defendant Kocurek since her demotion in 2009, whom provided her with her next days job assignment. In the summer of 2009, Plaintiff suffered a number of work related injuries which required her to be taken to the hospital. On or about September 1, 2009, Plaintiff was released to return to work provided she was not placed in position that required her to work outside for extended periods of time. Even though it was not required under her contract, Plaintiff met with Defendant WGMA, Defendant Ceres and her Union President to determine which positions she was able to perform based on her medical restrictions. Since, Plaintiff is a regular employee she is guaranteed a minimum salary based on a minimum of 40 hours a week. As a regular employee, Plaintiff is supposed to have preference over workers that are merely working "off the Board." Even though there are plenty of assignments that Plaintiff can perform with her medical restrictions, Defendant Kocurek has limited how much Plaintiff has been called to work.

23. On or about November 9, 2009, Plaintiff forwarded a notice of breach to Defendant Ceres Gulf, notifying them that it was in breach of Plaintiff's employment contract and demanded that it cure its breach. Without a direct written response, Defendant Kocurek would call Plaintiff for work close to 40 hours a week.

24. In December of 2010, the undersigned had a conversation with Plaintiff's Local Union President about whether Plaintiff had or had not been terminated. It was made clear that the conversation was not to be shared with Defendant Ceres or Defendant WGMA. Besides discussing the steps Defendant Ceres by and through Defendant WGMA would have to do to terminate Plaintiff as a regular employee, the undersigned discussed the fact that Defendant Ceres still treated Plaintiff as a regular employee because they still listed her as a regular employee and Defendant Ceres paid her holiday pay. Contrary to the representations by the Union President, the information about Plaintiff's Holiday pay was shared with at least Defendant Ceres.

25. In January of 2010, Plaintiff failed to receive her holiday pay for December which indicated that Plaintiff was no longer a regular employee of Defendant Ceres. Plaintiff immediately instructed her Union President to "start" the grievance process under the CBA by going and talking to Defendant Ceres about her purported termination. After the meeting, Plaintiff was advised by her Union President that Defendant Ceres and Defendant WGMA wanted to respond to Plaintiff in writing. To date, the Union President has not shared Defendant Ceres and Defendant WGMA response no written response has been received.

26. After the January meeting, Plaintiff continued to work for Defendant Ceres but at less that her guaranteed 40 hours. However, by April of 2010, Defendant Ceres has failed to call Plaintiff for any hours.

27. In January of 2010, the amount of work plaintiff is being called for has dropped done to an average of 29 hours a week. As of March 30th, 2010, Plaintiff has not received any hours under her contract.

28. For Plaintiff to maintain her health insurance benefits she must work an average of 30 hours per week. Furthermore, Plaintiff's retirement contribution is based on hours worked. At this point Plaintiff is fast approaching the point of no return, where it will be impossible for her to put in enough hours to maintain her Seniority and benefits.

29. As long as Plaintiff is a regular employee she is disqualified from "working of the board." If Plaintiff accepts work "off the board" she automatically terminates her contract as a regular employee.

## APPLICATION FOR PRELIMINARY INJUNCTION

30. Plaintiff would show that she is left with very little choice. She has a valid enforceable contract and yet Defendant Ceres is not working her the minimum of 40 hours per week that is required. There is plenty of work for Plaintiff as Ceres is still calling for workers "off the board" in positions that Plaintiff is able and willing to fill. Without being put to work by Defendant,. Plaintiff is unable to earn a living for herself and to pay her living expenses. Furthermore, by not working Plaintiff, she will loose an incalculable amount of benefits including her seniority, retirement benefits and health insurance coverage.

31. Plaintiff accordingly prays for a Temporary Injunction to require Defendant to put her back to work and abide by the employment contract.

32. If the injunction is not granted, Plaintiff will suffer great and irreparable harm since she will be forced to either to attempt to work "off the board" and give up all her rights and benefits guaranteed by her regular employment contract or be financially ruined. Accordingly, money damages are an insufficient remedy at law to reimburse Plaintiff for the losses complained of in this Petition.

33. After notice and hearing, Plaintiff requests the court order Defendant to abide by their contract and put Plaintiff to work for a minimum of 40 hours per week in positions that she is able to perform.

## CLAIMS

34. Plaintiff entered into an express contract with Defendant Ceres whereby Plaintiff agreed to become a regular employee of Defendant Ceres by agreeing to remove

her name from working "on the board." As further consideration, Defendant promised to work Plaintiff at least 40 hours a week and pay her accordingly. This action is for enforcement of Plaintiff's contract with Defendant which guaranteed her a minimum of 40 hours per work. Upon refusing to work Plaintiff when there are jobs available for her, is breaching such contract.

35. Plaintiff is entitled to recover a reasonable amount of attorney's fees from Defendant Ceres.

36. Defendants Ceres and WGMA retaliated against Plaintiff for being a witness about Defendant's Title VII violations and discriminated against Plaintiff because of her gender in violation of section 703(c) of Title VII by creating a hostile environment against her due to her gender, and by failing to take affirmative action to correct and redress these unlawful employment practices.

37. Plaintiff believes, and thus avers, that the effect of the Defendants Ceres and WGMA unlawful employment practices has been to limit, classify and discriminate against females in ways which jeopardize and tend to deprive them of employment opportunities and otherwise adversely affect their status as employees because of their sex in violation of Title VII; and Plaintiff, a victim of such practices, was and will continue to be unlawfully deprived of income in the form of wages and of prospective retirement benefits, seniority, Social Security benefits, insurance coverage and other monetary and non-monetary benefits due to her solely because of her sex in sums to be proved at trial.

38. Plaintiff has no plain, adequate or complete remedy at law to correct Defendants Ceres and WGMA unlawful employment practices, and the injunctive and other equitable relief she seeks is her only means of securing full relief from these practices. Plaintiff is now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

39. Plaintiff is entitled to recover from Defendants Ceres and WGMA reasonable attorneys' fees as provided in section 706(k) of Title VII.

40. Plaintiffs pleads a State cause of action against Defendant Kocurek based on tortious interference. As a Chief Clerk Defendant Kocurek is the individual who is responsible for assigning work to Plaintiff. Defendant Kocurek is not a direct employee of Defendant Ceres but rather is a Union Member who is responsible to ensure the contracts are being followed. By failing to call for Plaintiff, he is improperly interfering with Plaintiff's contract with Defendant Ceres. There is only one of two explanations for Defendant Kocurek's actions. Either he is making decisions on his own, in which case

he is improperly interfering with Plaintiff's contract or he is acting at the direction of a third party in which case he is failing to fulfill his obligations to Plaintiff.

41.     Plaintiffs pleads a State cause of action against Defendant ILA 1351 and Defendant Kocurek based on Breach of Fiduciary Duty.  Defendant ILA 1351 and Defendant Kocurek have a Fiduciary Duty to be sure that Union rules and contracts are followed.  Defendant ILA 1351 breached this duty by not properly representing Plaintiff and by sharing confidential information with Defendant Ceres and/or Defendant WGMA.  By not standing up for Plaintiff and calling her as a regular employee Defendant Kocurek is failing to uphold his Union obligation to cause no harm to Union brothers and sisters.  Likewise, he is not fulfilling his duties to Plaintiff as a CIC by not upholding Plaintiff's status as a regular employee.   In either case, Defendant Kocurek is Breaching his Fiduciary Duty to Plaintiff.

42.     Defendant Kocurek's tortious interference and Defendant ILA 1351 and Defendant Kocurek's Breach of Fiduciary Duty was aggravated by that kind of willfulness, wantonness, and malice for which the law allows the imposition of exemplary damages.  Defendant Kocurek acted with an evil intent to harm Plaintiff.  Defendant's interference was intentional, willful, wanton, and without justification or excuse, and was done with gross indifference to the rights of Plaintiff.  In this connection, Plaintiff has suffered losses of revenue, time and other expenses, including attorney's fees incurred in the investigation and prosecution of this action.  Accordingly, Plaintiff ask that exemplary damages be awarded against Defendant Kocurek.

43.     By divulging confidential information and by not properly representing Plaintiff according to its obligations as a union Defendant ILA 1351 has breached its duty of fair representation.  Defendant ILA 1351 has worked with the other Defendants for the benefit of the other Defendants and is not working to represent the interest of Plaintiff as a member of the union.

44.     The Defendants ILA 1351, ILA SAGCD, Ceres, and WGMA are not abiding by the grievance procedure that is established under the CBA.  Instead of a balanced grievance procedure as detailed by the CBA the Defendants have established a grievance procedure that favors the employers by only having employers listening and deciding the grievance.  This not violates the letter of the CBA but the spirit of the CBA to provide workers with a fair forum to address problems without having to file a lawsuit.  The parties Defendants are therefore in breach of the CBA and Plaintiff has no other method to address the breach except by filing the current case.

45.     Defendants have all conspired to deny Plaintiff her rights under her union membership, the CBA, and Title VII.  Defendants ILA 1351, ILA SAGCD, Ceres, and WGMA have established a process that instead of solving problems merely supports the

improper actions of employers.  Additionally, the Union President instead of working for the best interest of the Union Members is actually working with the Defendants Ceres and WGMA to deny Plaintiff's rights.  This is a conspiracy and the Defendants should be held jointly and severely responsible for Plaintiff's damages.

     WHEREFORE, Plaintiff prays that this Court (i) issue a Preliminary Injunction ordering Defendant Ceres to abide by its contract with Plaintiff and call her for work for at least 40 hours per week; (ii) order Defendant Ceres to make the Plaintiff whole by paying Plaintiff a sum in excess of $10,000.00 for breach of its contract with Plaintiff; (iii) declare that the employment practices complained of in this complaint are unlawful in that they violate Title VII; (iv) permanently enjoin the Defendants and its owner/managers, officers and employees from engaging in all practices found by this court to be in violation of Title VII; (v) order Defendants to make the Plaintiff whole by paying Plaintiff a sum in excess of $10,000.00 as compensatory and punitive damages resulting from the actions of Defendants in violation of Title VII; (vi) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the court deems necessary to evaluate such compliance; (vii) order the Defendants to pay Plaintiff's costs and expenses and reasonable attorneys' fees as provided in Title VII in connection with this action; (viii) order Defendant Kocurek to pay Plaintiff a sum in excess of $10,000.00 as compensatory and punitive damages for Defendant's tortious interference; (ix) order the Defendants ILA 1351 and Kocurek to pay Plaintiff a sum in excess of $10,000.00 as compensatory and punitive damages for breach of their Fiduciary Duty; (x) order the Defendant ILA 1351 to pay Plaintiff a sum in excess of $10,000.00 as compensatory damages for breach of its duty of fair representation; (xi) declare the grievance practice in violation of the CBA and order the Defendants to pay Plaintiff a sum in excess of $10,000.00 as compensatory damages; (xii) to hold all Defendants jointly and severally liable for all damages due to their conspiracy to deny Plaintiff her rights; and (xiii) grant such other and further relief to the Plaintiff as the Court deems just and proper.

     **This 30th day of September, 2010**

          Respectfully Submitted,

          STEPHEN J. SCHECHTER

          /s/ Stephen J. Schechter
          Stephen J. Schechter
          State Bar No. 17735512
          8 Spencer Road
          Suite 200
          Boerne, Texas 78006
          Tel: 830-249-3500
          Fax: 830-249-8500

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded, via facsimile, electronically and/or delivery by the U.S. Postal Service, First Class Certified Mail, Return Receipt Requested, on this the  16th  day of  September , 2010 to the attorneys of record.

          /s/ Stephen J. Schechter
            Stephen J. Schechter