UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARTHA L ANGLIN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-10-2082 |
| § | |
| CERES GULF, INC., *et al*, § | |
| § | |
| Defendants. § | |

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court are Defendant International Longshoremen's Association Local 1351's ("ILA") motion for summary judgment (Doc. 45), Defendant International Longshoremen's Association's South Atlantic and Gulf Coast District, ("SAGCD") motion for summary judgment (Doc. 52), Defendant Ceres Gulf, Inc.'s ("Ceres") motion for summary judgment (Doc. 53), and Defendant West Gulf Maritime Association's ("WGMA") motion for summary judgment. Doc. 54.

ILA and SAGCD move for summary judgment on the grounds that Plaintiff Martha L. Anglin's purported state law claims against them are preempted by Section 301 of the Labor Management Relations Act ("LMRA") and barred by the six month statute of limitations on claims brought under that Act. *See* 29 U.S.C.A. § 185; *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281 (1983).

Defendants Ceres and WGMA move for summary judgment on the grounds that Anglin's claims are barred by a collective bargaining agreement, which controls the terms of Anglin's employment and requires that she follow the agreement's grievance and arbitration provisions before bringing her case in court. These Defendants also assert that Anglin has failed to introduce sufficient evidence to create a genuine issue of material fact on her claims against

them.

Because the Court finds that Anglin's state law claims are preempted by the Labor Management Relations Act, and because Anglin brought her claim more than six months after the events on which her claim is based, the Court grants ILA's and SAGCD's motions for summary judgment. Because the Court agrees that Anglin's claims against Ceres and WGMA fall under the terms of the collective bargaining agreement and because Anglin has failed to exhaust the remedies available to her under that agreement, the Court grants Ceres' and WGMA's motions for summary judgment.

Additionally, the Court finds that Anglin has failed to effect service on the remaining Defendants, Thomas J. Simmers, Ronald N. Rutolo, and Wayne Kocurek, within the time limit set forth in Rule 4. Therefore her claims against these Defendants are hereby dismissed.

Background

The basic facts of this case were outlined in the Court's Opinion and Order dated September 3, 2010. Doc. 22. On June 2, 2010, Anglin filed suit in the 269th Judicial District Court of Harris County, Texas. Doc. 1-2. On June 14, 2010, Ceres removed the case to this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. Doc. 1. On September 30, 2010, Anglin filed her amended complaint, adding Defendants ILA and SAGCD.

In her amended complaint, Anglin added allegations that ILA has "a fiduciary duty to be sure [sic] that Union rules and contracts are followed . . . [and that] Defendant ILA 1351 breached this duty by not properly representing Plaintiff and by sharing confidential information with Ceres and/or Defendant WGMA." Doc. 27 at 7. Anglin characterizes her allegation as a state law claim for breach of ILA's "duty of fair representation." *Id.* Anglin also asserts that ILA, SAGCD, Ceres, and WGMA failed to abide "by the spirit of the CBA" by not providing Anglin

"a forum to address problems without having to file a lawsuit" and that these Defendants "conspired to deny Plaintiff her rights under her union membership, the CBA, and Title VII." *Id.*

Legal Standard

A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.

*Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

<u>Defendants' ILA and SAGCD Motions for Summary Judgment</u>

ILA moves for summary judgment on the grounds that "Plaintiff's state law claim of breach of fiduciary duty is preempted under Section 301 of the Labor Management Relations Act." Doc. 45 at 6. If the LMRA provisions preempt Anglin's state law causes of action, ILA argues, the Act's six month statute of limitations would bar Anglin's claims, which "are based on events that precede the filing of this litigation as to Defendant ILA Local 1351 by more than six

months." *Id.* at 8. SAGCD has also filed a motion for summary judgment in which it asserts that Anglin's claims against it are duplicative of her claims against ILA, and joins ILA's motion. Doc. 52.

Anglin responds that her "breach of fiduciary claim is independent of the Collective Bargaining Agreement . . . and therefore is NOT preempted by Section 301 of the Labor Management Relations Act." Doc. 48. Anglin also asserts that "even if [her] claim is preempted, . . . [i]t was not until August 31, 2010, that Anglin learned that ILA 1351 divulged the confidential information when Ceres testified that it learned about Anglin's employment status from the Union President." *Id.* In support of this claim, Anglin cites to testimony of Troy Gouger, a Ceres employee, given in a preliminary injunction hearing in this matter on August 31, 2010. Mr. Gouger testified that a representative of Anglin's union told Gouger that Anglin had "been paid for holiday pay in November." *Id*. (citing Doc. 48-1 at 4).

"[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911 (1985). "Pre-emption by federal law cannot be avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort." *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904 (1990).

Here, Anglin asserts that ILA has "a fiduciary duty to be sure [sic] that Union rules *and contracts* are followed . . . [and that] Defendant ILA 1351 breached this duty by not properly

representing Plaintiff and by sharing confidential information with Ceres and/or Defendant WGMA." Doc. 27 at 7 (emph. added). ILA's duty to "properly represent Plaintiff" in any negotiations or discussions with Ceres could only have been created by the CBA, which appointed ILA as Anglin's representative in negotiations with her employer, Ceres. *See Rawlson*, 495 U.S. at 1910 ("If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners."). "Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law." *Id.* Because Anglin's claims against ILA and SAGCD are governed by the LMRA, those claims are subject to that Act's statute of limitations.

Actions by union members alleging a breach of the union's duty of fair representation are subject to a six-month limitations period. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151. Here, Anglin's claims against the ILA and SAGCD are based on conduct that occurred, at the latest, in November, 2009.[1] Anglin filed her state claim on June 2, 2010, more than six months after the alleged conduct, but did not bring claims against ILA and SAGCD until she filed her amended complaint (Doc. 27) on September 30, 2010, approximately ten months after the alleged conduct.

Anglin contends that "it was not until August 31, 2010, that Anglin learned that ILA 1351 divulged the confidential information" and that her claim was filed within six months of when she "knew or should have known" of ILA's allegedly unlawful conduct. In support of her argument, Anglin cites four lines from the transcript of a preliminary injunction hearing held before this Court in which Anglin's counsel said to Mr. Gouger: "[Y]ou mentioned that the union told you that she'd been paid for holiday pay in November. Who told you that?" To which Mr.

---

[1] Anglin's claims against ILA and SAGCD appear to be based on a small portion of the testimony of Ceres employee Troy Gouger, who stated before the Court in a preliminary injunction hearing that the union defendants gave him information about Anglin's employment status in November, 2009. *See* Doc. 48 at 2; Doc. 48-1 at 4.

6 / 11

Gouger responded "I believe it was [ILA president] Charles Montgomery. It may have been [ILA vice-president] Eloy [Cortez]." Doc. 48-1 at 4. Contrary to Anglin's assertion, this testimony indicates only that the ILA may have disclosed information about Anglin's pay to Ceres, but does not indicate that Anglin recently discovered the disclosure or had no way previously to discover it. Anglin has introduced no evidence nor has she made any allegation that the disclosure was unknown to her at the time she brought her complaint. Because Anglin has not demonstrated an adequate reason for her failure to bring claims against the union Defendants within six-months of the relevant conduct, her claims against ILA and SAGCD are time-barred.

<u>Defendants Ceres' and WGMA's Motions for Summary Judgment</u>

Defendants Ceres and WGMA have both moved for summary judgment on the grounds that the grievance and arbitration procedures of the CBA are Anglin's exclusive remedies for her claims against them. Docs. 53, 54. In her amended complaint, Anglin alleged that Ceres and WGMA retaliated against her for being a witness about the Defendants' purported Title VII violations,[2] that the Defendants discriminated against her on the basis of gender in violation of her Title VII rights, that the Defendants failed to "abid[e] by the grievance procedure that is established under the CBA," and that the Defendants "have all conspired to deny Plaintiff her rights under her union membership, the CBA, and Title VII." Doc. 27 at 6-7. Anglin also claims that Ceres breached its employment contract with her by not providing her with a minimum of 40 hours of work per week. *Id.* Ceres and WGMA contend that Anglin lacks standing to assert these claims as she is bound by the terms of the CBA and has failed to exhaust the grievance

---

[2] In various submissions to the Court, Anglin has referenced an alleged Title VII hearing against Ceres or WGMA to which Anglin was a witness. Her participation in this hearing is the grounds for her retaliation claim. Anglin has not identified the hearing to which she was a witness and Ceres has introduced summary judgment evidence in support of their claim that "during 2009, there were no charges of discrimination filed against Ceres by an ILA worker in Texas." Doc. 53 at 11. *See* Doc. 53-9 at 2. There is no evidence in the record of any EEOC charges against Ceres during the relevant time other than Anglin's claims.

procedures of that agreement.

An "individual employee who claims a violation by his employer of the collective bargaining agreement is bound by the terms of that agreement as to the method of enforcing his claim." *Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F.2d 167, 170 (5th Cir. 1971) (citing *Vaca v. Spies*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). An employee is not bound to the terms of the CBA, however, when her union "arbitrarily refuse[s] to process a meritorious grievance or processes it in a perfunctory manner." *Id.* at 171 (citing *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1969)). When the employee's union breaches its duty of fair representation, "the employee may by-pass contractual remedies and maintain suit against the employer." *Id.* Here, Anglin has made no such showing. As the Court previously discussed, Anglin has introduced scant evidence of ILA's breach of its duty to her and relies almost entirely on speculation in support of her allegation that ILA breached its duty to her.[3] Anglin is therefore bound by the terms of the CBA as to the method of enforcing her claims against Ceres and WGMA for violating the agreement.

Anglin appears to concede this point and limits her response to the Defendants' motion for summary judgment to a discussion of the preclusive effect of the CBA on her Title VII and conspiracy claims. Anglin allows that "a CBA can require a party to arbitration [sic] [of the member's Title VII claims] IF [sic] the CBA clearly and unmistakably requires union members to arbitrate," but contends that the CBA at issue in this case is insufficiently clear to require arbitration of her Title VII claims. Doc. 57 at 10-11.

---

[3] Anglin relies on four lines of testimony to show that ILA provided Ceres with information about Anglin's holiday pay. She has not alleged with any specificity that this information was confidential or that ILA made assurances of non-disclosure. Nor has Anglin demonstrated any basis in law for her contention that disclosure of "holiday pay" information is a breach of the union's duty to her.

The parties in this case agree that, under the standards of *14 Penn Plaza*,[4] parties to a CBA must arbitrate statutory anti-discrimination claims when the agreement to arbitrate is explicitly stated in the CBA. *See* Docs. 53 at 8, 54 at 8, 57 at 10. They dispute whether the CBA provision in this case satisfies the requirement that the agreement to arbitrate statutory anti-discrimination claims is "explicitly stated."

The arbitration provision in *14 Penn Plaza* required that:

[C]laims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, ... or any other similar laws, rules, or regulations . . . shall be subject to the grievance and arbitration procedures . . . as the sole and exclusive remedy for violations.

129 S.Ct. at 1461. The Supreme Court determined that the arbitration provision in *14 Penn Plaza* satisfied the specificity requirement from its earlier ruling in *Wright*,[5] in which the Court found that a CBA provision requiring arbitration of "'[m]atters under dispute' . . . does not contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination." *Id.* at 80 & 82.

The arbitration provision in this case states that the "grievance procedure and arbitration shall be the exclusive remedy with respect to any and all disputes arising between the Union or any person working under the Agreement." Doc. 57-1 at 18. In contrast to the arbitration provision in *Wright*, the CBA in this case refers to "any and all disputes." The agreement contains an explicit statement that it covers *all* disputes, rather than referring vaguely to "matters."

---

[4] *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S.Ct. 1456 (2009).
[5] *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391 (1998).

Moreover, the parties to the CBA supplemented its terms with a "memorandum of understanding," which clarifies the scope of the agreement. The memorandum provides that

> Any complaint that there has been a violation of any employment law, such as Title VII, FLSA, HIPAA, ERISA, ADA, ADEA, FMLA AND OSHA, or any comparable state law or local ordinance, shall be resolved solely by the grievance and arbitration procedures of the collective bargaining agreement.

Doc. 54-3 at 2.

The memorandum of understanding explicitly states that Title VII claims are subject to the grievance and arbitration provisions contained therein.[6] Because Anglin has introduced no evidence that she has attempted to comply with the grievance and arbitration procedures of the CBA, she lacks standing to assert her claims in this Court. The Court therefore grants Ceres' and WGMA's motions for summary judgment.

<u>Defendants Thomas J. Simmers, Ronald N. Rutolo, and Wayne Kocurek</u>

Anglin also asserts claims against individual Defendants Simmers, Rutolo, and Kocurek. There is no indication that Anglin has effected service on these Defendants, nor have any of the individual Defendants responded to Anglin's complaint or filed an appearance in this case. Plaintiff Anglin has not effected service on these Defendants within 120 days, as required by Rule 4(m).

<u>Conclusion</u>

For the foregoing reasons, the Court hereby

**ORDERS** that Defendants ILA's, SAGCD's, Ceres', and WGMA's Motions for Summary Judgment (Docs. 45, 52, 53, & 54) are **GRANTED**.

---

[6] Anglin contends that ILA and WGMA cannot "force an unapproved grievance and arbitration procedure on the ILA 1351 members" through the memorandum of understanding. Doc. 57 at 11. The reasoning in *Wright* and *14 Penn Plaza* applies to "a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination." *Wright*, 525 U.S. at 80. Anglin provides no clear distinction between a union negotiated CBA and a union negotiated memorandum of understanding that supplements the CBA, nor any reason to consider the latter a "forced" agreement.

SIGNED at Houston, Texas, this 16th day of March, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE