IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARTHA L. ANGLIN,                §
                                 §
                                 §
         Plaintiff,              §
                                 §
VS.                              §   CIVIL ACTION NO. H-10-2082
                                 §
CERES GULF, INC. and WEST GULF   §
MARITIME ASSOCIATION,            §
                                 §
         Defendants.             §

**<u>OPINION AND ORDER OF SUMMARY JUDGMENT</u>**

Pending before the Court in the above referenced cause, asserting (1) violations of Title VII of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* (retaliation and hostile work environment based on gender), and (2) conspiracy to deny Plaintiff her rights under Title VII,[1] is Defendants Ceres Gulf, Inc. ("Ceres") and West Gulf Maritime Association's ("WGMA's") motion for summary judgment (instrument #79).  All other Defendants in this action have been dismissed.

On appeal the Fifth Circuit initially affirmed this Court's earlier summary judgment (#60) in favor of all Defendants in this action, but on rehearing reversed and remanded that part of the Opinion and Order involving Ceres and WGMA. Judgment on Rehearing and On Petition for Rehearing, # 74 and #75.  The Fifth

---

[1] The suit was removed from state court under 28 U.S.C. § 1331 on the grounds that all the state-law claims were preempted pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which preempts state law claims when their resolution depends on the meaning of a collective bargaining agreements. *Owen v. Carpenters District Counsel*, 161 F.3d 767, 773 (4th Cir. 1998), *citing Lingle v. Norge Div. of Magic Chef, Inc.* 486 U.S. 399, 405-06 (1988), and *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

Circuit concluded that Plaintiff raised a genuine issue of material fact as to whether the Memorandum of Understanding stating that Title VII claims must be exhausted in accordance with that grievance and arbitration procedure in the CBA binds Plaintiff.  At docket call on December 6, 2013 after the Court denied a motion to abate this case while Plaintiff exhausted the internal grievance procedure under the CBA with respect to her breach of CBA claim and indicated that it would grant summary judgment on that claim on the grounds that she lacked standing to pursue it here, as it now has, Defendants agreed on the record to waive their MOU defense so that the Title VII and related conspiracy claims could be resolved now.

After carefully reviewing the pleadings, the motions, the responses, the replies, and the applicable law, for the reasons explained below, the Court finds that Anglin fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), no less to provide summary judgment evidence pursuant Rule 56, to support key elements of her causes of action under Title VII to raise a genuine issue of material fact for trial.

## Background

WGMA is a nonprofit maritime trade association of steamship owners, operators, agents, terminal operators, and stevedores, among whose stevedore members is Ceres, Plaintiff's direct employer[2] since 2004.  Plaintiff Martha L. Anglin

---

[2] Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees

("Plaintiff" or "Anglin") is a union member who worked pursuant to a CBA between WGMA and Anglin's union, the International Longshoreman's Association ("ILA"),[3] negotiated and administered by WGMA.

In August 2004 Anglin began working for Ceres as a "regular" employee in the position of a shipping clerk. A "regular" employee is guaranteed forty hours of work and paid vacation and holidays.

Anglin claims that in the fall of 2008, she was named as a witness in a Title VII complaint, which in the First Amended Complaint she stated was against Ceres, but later conceded was against another employer, not Anglin's. Affidavit of Anglin, #80, Ex. F. She claims that the superintendent of the defendant company stated that the stevedore companies were going to "take care of me." *Id.* at p.2. She alleges, "It is the common practice at the Houston docks that if you complain about one stevedore company you get blacklisted by all the companies." *Id.* at pp. 1-2. She asserts that after learning that she was named as a witness, Ceres unilaterally determined that she was no longer qualified to perform as Clerk in Charge ("CIC") or Clerk Working Ship ("CWS") and demoted her from her position as CIC and CWS, where she had worked for several years, and "allowed her to work as timekeeper." She further complains that a male employee with

_____

. . . any agent of such person . . . ."  42 U.S.C. § 2000e(b).

    [3] Plaintiff's local union is ILA 1351.

- 3 -

less Seniority, Greg Walcott,[4] and a male employee with the same Seniority, Bobby Oliphant, were allowed to be the CWS.  However, she contends, "Mr. Oliphant did not know how to complete the paper work, so not only was I doing the duties and paperwork of a timekeeper, but I was also doing all the paperwork of the Clerk Working Ship for Mr. Oliphant."  *Id.*

In April 2009, Anglin claimed that she was checking messages on the company phone when she saw a text message with "an offensive sexually explicit message about 'swallowing sperm.'" *Id.*  She filed a complaint. [5]  Afterwards, without identifying when, she claims that in retaliation she was "assigned to the least desirable jobs in an effort to force me to quit as a regular employee," that she was required to work in the heat without

---

[4]  In her Complaint she mentions only Oliphant, but in her response to the motion for summary judgment she names Walcott, too.

[5]  In its now pending motion for summary judgment (#79), Ceres submits evidence that it then placed the alleged offender on non-referral status until the Joint Productivity Review Committee determined that there was no evidence of harassment and allowed the clerk to return to work.  #79-1, Decl. of Chelsea Egmon ("Egmon"), Vice President of Labor Relations WGMA and custodian of the collective bargaining agreements between WGMA and the union, at ¶ 7, Ex. 1.  Egmon further declares that even though WGMA sent Plaintiff numerous letters explaining the grievance and arbitration procedures for any harassment or discrimination claim, Anglin did not provide any information to Ceres, WGMA, and the local union facilitator to aid in the investigation of the claim, did not appear at the May 6, 2009 grievance (or any subsequent meetings postponed to allow her time to find an attorney), and never identified any other incident beside the single offensive phone call  (*id.* at ¶ 5, Ex. 1). Plaintiff does not challenge nor submit evidence contesting Egmon's statement.

-4-

breaks, while "union members off the board[6] who had less seniority than I and whom [sic] were not regular employees" were assigned the inside office jobs and jobs sitting in air conditioned trucks. Furthermore she claims that her male companions who were working in the heat were permitted to take breaks and were relieved on a regular basis, while she was not.  *Id.* at pp. 2-3.

In the summer of 2009, Anglin suffered three episodes of work-related illness, necessitating transport to a hospital by ambulance.  After one of the stays, she went to the docks and used a company truck to pick up her personal belongings that had been left behind when she was taken to the hospital.  She was written up for using the truck and put on a thirty-day non-referral,[7] even though, she claims, male workers regularly used the trucks when they were not working for Ceres.  She complains of one instance, referred to the grievance panel, that involved male workers who

---

[6] Anglin explains "working off the board" refers to the procedure in which, because the number of workers that will be needed varies, the CIC each day contacts the Union to order workers for the next day, and the Union then, based on Seniority, sends workers to the employer.  Unlike those "working off the board," "regular" employees were contacted directly by the CIC for their assignments, were guaranteed forty hours per week and paid vacation and holidays, and had preference in job assignments over those working off the board.  #80. Ex. F at p. 4.

[7] In her affidavit at p. 2 Anglin states, "Non-referral is the process where a union member can no longer work for a certain period of time."
    In the pending motion for summary judgment, Defendants show that Local 1351 contested the decision to put her on non-referral status for 30 days, that the grievance was heard the following month, and that the non-referral was upheld.  Injunction Hearing Transcript, #34 at 167:25-168:21; Egmon Decl., #79-1, Ex. 4.

were not even Ceres employees driving the company trucks to a training session.  She asserts that she was never told not to use the trucks.  The ILA 1351 filed a grievance on Anglin's behalf, but when it was heard, the non-referral was upheld.  Egmon Decl. at Ex. 4.

As another example of discriminatory treatment, Anglin claims that when she asked Randy Weiskopf to explain something about a computer shipping program and he suggested a shortcut, Chief Clerk Wayne Kocurek, who is responsible for assigning work to Plaintiff,[8] told Weiskopf, "You don't tell her nothing--you don't teach her nothing."  #80, Ex. F at p. 3.

After the three hospitalizations in the summer of 2009, Anglin was released to return to work with restrictions to minimize her exposure to heat and sun because it might increase her blood pressure.  Anglin, Ceres, and the local union negotiated about the kinds of jobs that would meet these restrictions.  Ceres represented that it did not have enough work that met the restrictions so that she could remain a regular employee, i.e., have forty hours of work per week, but that it would accommodate her by allowing her to "work off the board" instead.  Anglin claims this articulated reason is false and that Ceres breached its contract with her.  She cites the testimony of Nathan Wesley, Injunction Hearing Transcript,[9] #80, Ex. H at a page marked USCA5

---

[8] First Amended Complaint, #27 at ¶ 40.

[9] The Court has tried to cite to passages in #34, the complete transcript of the injunction hearing, rather than the

340, but the Court finds that testimony does not state that Ceres had enough work to give her 40 hours a week.  Anglin's First Amended Complaint asserts that as a regular employee, she is supposed to have preference over employees who are working "off the board," but that Ceres limited how often she was called to work so that she could not satisfy the forty-hour-a-week requirement even though there were plenty of assignments available.  Anglin further claims that under her contract with ILA 1351, she is not allowed to take "off the board" jobs as long as she is a regular employee.  #80, Ex. G, Hiring Hall Rules of ILA local 1351 at p. 5, ¶ 8 ("**REGULAR EMPLOYEES GETTING ON BOARD.**  No regular employee can get on the board.").  Anglin alleges that on November 9, 2009 she sent a notice of breach of the CBA to Ceres.[10]

In January 2010 Plaintiff did not receive her holiday pay for December 2009, a sign, according to her, that she was no longer a regular employee.  She states that she immediately told the Local Union President to commence the grievance process under the CBA by talking to Ceres about her purported termination.  After the meeting, she was told by the Union President that  Ceres and WGMA wanted to respond to her in writing, but she never

---

limited excerpts attached to the parties' motion for summary judgment and response, to provide the context for quotations. Where the parties identify page numbers available only on their excerpts, however, the Court has cited to them.

[10] Defendants state that Anglin did not request a grievance to contest the decision to have her work "off the board," nor did she instruct her union to do so on her behalf. Injunction Hearing Transcript, #44 at 104:8-11; Egmon Decl. #79 at ¶ 8, Ex. 11.

received such a response, allegedly a breach of the CBA because she maintains that she had used the grievance procedure under the CBA. She continued to work for Ceres, but at fewer than forty hours per week. By April 2010, however, Ceres failed to call Anglin for any work hours. She claims that to maintain her health insurance she must work an average of thirty hours per week, that her retirement contribution would be substantially reduced by working less than forty hours per week, and that she would be unable to retain her Seniority and benefits with fewer work hours.

On September 30, 2011, Ceres (#53) and WGMA (#54) filed motions for summary judgment, arguing in relevant part that the evidence she presented was insufficient to create a genuine issue of material fact on her claims of conspiracy and violation of Title VII against them.

In CBA negotiations in 2004 the parties to the CBA supplemented the CBA's terms with a "memorandum of understanding" ("MOU"),[11] which was reduced to writing. The MOU explicitly stated,

> Any complaint that there has been a violation of any employment law, such as Title VII, FLSA, HIPAA, ERISA, ADA, ADEA, FMLA and OSHA, or any comparable state law or local ordinance, shall be resolved solely by the grievance and arbitration procedures of the collective bargaining agreement.

#54-3 at p. 2; also #79-1, Ex. 8 at p. 1.

---

[11] A copy of the MOU is found at #79-1 (Declaration of Chelsea Egmon, Vice President of Labor Relations and WGMA), Ex. 8.

On the appeal of this Court's Opinion (#60), based on its recent opinion in *Ibarra v. United Parcel Service*, 695 F.3d 354 (5th Cir. 2012)(holding that for a CBA "to 'clearly and unmistakably' waive a union member's right to a judicial forum for statutory discrimination claims, the CBA must 'specifically identify' the relevant statute or otherwise 'state that statutory discrimination claims shall be subject to the [CBA's] grievance procedure"), the Fifth Circuit found that the CBA in dispute here failed to "specifically identify" Title VII or to "state that statutory discrimination claims shall be subject to the [CBA's] grievance procedure." #75 at p. 2.[12] The panel then turned to the 2004 MOU,[13] which clearly does identify Title VII, but opined,

> There remains a factual question as to
> whether a Memorandum of Understanding (MOU)
> entered into between the Union and WGMA is
> binding on Anglin. The MOU specifically
> identifies Title VII, indicating *inter alia*
> that complaints brought under that statute
> are subject to the CBA's grievance and
> arbitration provisions. Thus, if the MOU is
> binding on Anglin, the MOU and CBA together
> would appear to satisfy this Court's
> requirements in *Ibarra*. However, Anglin has
> testified that the MOU was rejected by local
> union members and that its provisions were
> voluntary. Her testimony appears to be
> uncontroverted. Further, the copy of the MOU
> provided in the trial record was never
> executed. In its Opinion on the Motions for

_____

[12] Also available as *Anglin v. Ceres Gulf, Inc.*, 503 Fed. Appx. 254 (5th Cir. Dec. 18, 2012)(*per curiam*).

[13] No changes were made to the MOU in the 2010 negotiations to extend the multi-employer CBAs. #79-2, Declaration of Clyde Fitzgerald, President of the South Atlantic and Gulf Coast District of the International Longshoremen's Association.

Summary   Judgment, the district court
discussed this question only in passing.

The panel reversed that part of this Court's Opinion relating to
the summary judgment in favor of Ceres and WGMA and remanded the
matter to this Court to determine whether the MOU binds Anglin to
follow and exhaust the grievance and arbitration procedure of the
CBA on her Title VII claims, or whether she is free to pursue them
in this court.  As noted, Defendants have now withdrawn their
defense based on the MOU, so this Court can rule on the motions
for summary judgment of the Title VII issues and related,
derivative conspiracy claim.

**Standard of Review:**

**Federal Rule of Civil Procedure 56**

Summary judgment is proper when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(c).  The movant has the burden to demonstrate that
no genuine issue of material fact exists and that it is entitled
to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317,
323 (1986).  The substantive law governing the claims identifies
the essential elements and thus indicates which facts are
material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).

Where the non-movant bears the burden of proof at trial,
the movant need only point to the absence of evidence to support

an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996); *Adams Family Trust v. John Hancock Life Ins. Co.*, 424 Fed. Appx. 377, 81 & n.11 (5th Cir. May 11, 2011).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999). Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

While a failure to state a claim is usually challenged by a motion for dismissal under Rule 12(b)(6), it may also constitute the basis for a summary judgment under Rule 56 because "the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992). In such circumstances, the motion for summary judgment challenging the sufficiency of the complaint will be "evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). A motion for summary judgment should be granted if, accepting all well-plead facts as true and viewing them in the

light most favorable to the plaintiff, the plaintiff's complaint nonetheless fails to state a claim. *Id.*

**Federal Rule of Civil Procedure 12(b)(6)**

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v.*

- 13 -

*FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

**Title VII Claims Against WGMA**

**1.  Defendants**

Defendants first contend that all Anglin's Title VII claims against WGMA fail as a matter of law because WGMA was not her "employer," as defined under 42 U.S.C. § 2000e(b). Moreover, even if WGMA was acting as Ceres' agent in any of the actions in dispute, a suit against an employer's agent is considered a suit against the employer and "a party may not maintain a suit against both an employer and its agent under Title VII." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)("While Title VII defines the term employer to include 'any agent' of an employer, § 2000e(b), this circuit does not interpret the statute as imposing individual liability for such a claim. Congress's purpose in extending the definition of an employer to encompass

an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII.").

Furthermore, WGMA is a trade association that negotiates and administers a multiemployer CBA.  The Ninth Circuit, in a case in which the facts are similar to those here, held that such a trade association is not an employer under Title VII.  *Anderson v. Pacific Maritime Assoc.*, 336 F.3d 924 (9th Cir. 2003).

**2.  Plaintiff**

Anglin, citing *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985), responds that she is not arguing that WGMA is her employer and she is not suing WGMA as Ceres' agent, but is suing him personally.  Plaintiff further asserts that WGMA violated her rights when Anglin was identified as a witness against a different stevedoring company which was part of the WGMA association, as evidenced by the statement by the superintendent of the defendant company that stevedore companies were going to "take care" of Anglin.  Anglin Affid, Ex. F at p.2. She further charges that one of WGMA's grievance judges, Dan Czar, bragged  that  he  could punish workers of one company for complaining about the employment practices of another company. *Id.*

**3.  Court's Decision**

Regarding WGMA's status as an employer, the Court would first point out that the case cited by Plaintiff, *Sims,* is brought under Louisiana statutory law, which allows a plaintiff who is injured by both a corporation and its officer, individually, to

sue both.  It is not apposite here, where Plaintiff has chosen to sue under Title VII.

Even if a company is not a direct employer of the plaintiff, it may be held liable if it is part of an "integrated enterprise under a test that the Fifth Circuit applies in Title VII and related cases." *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983); *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 344 (5th Cir. 2007); *Schirle v. Sokudo USA, L.L.C.*, 484 Fed. Appx. 893, 2012 WL 3100879, at *3-4 (5th Cir. July 31, 2012).  "Superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer."  *Id.*  To determine whether two companies are so integrated, under four factors first adopted by the Supreme Court to apply in the area of labor relations,[14] the court examines "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  *Trevino,* 701 F.2d at 404; *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 ("The *Trevino* test has been repeatedly used in both this circuit and others to ascertain when distinct entities may be considered integrated as a single employer": the second factor has "traditionally been the most important, with courts refining their analysis to the single question, 'What entity made the final decisions regarding employment matters related to the person

_____

[14] *Trevino,* 701 F.2d 404 & n.10, *citing Radio Union v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 257 (1965).

claiming discrimination?'"); *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002).

The Ninth Circuit applied that four-factor integrated enterprise test in *Anderson*, 336 F.3d 924, in finding that an association bargaining for and administering a multiemployer CBA with a union was not integrated with the employer and was not liable as an indirect employer for race discrimination against longshoremen. It is not binding authority on the Fifth Circuit courts even though the facts are quite similar. Nevertheless, the four-part test is applied to Title VII claims in this Circuit, and Anglin has failed to allege, no less prove, that WGMA satisfies any of the prongs to hold WGMA liable as an integrated entity with direct employer Ceres for gender discrimination or retaliation.

Moreover, in Anglin's allegation that a WGMA judge bragged that he could punish workers of one company for complaining about the employment practices of another company, she provides no context, i.e., where it was said, to whom, in what context, and how Anglin learned of it. It is unsubstantiated hearsay. Furthermore she fails to link that judge, Dan Czar, or his alleged "bragging" statement to her own case in any way through pleading facts, no less submitting summary judgment evidence. Her argument that the judge's statement "directly involved WGMA in the process" for resolving her discrimination complaint is conclusory and far-fetched and fails to raise a genuine issue of fact for trial.

Thus the Court concludes that Plaintiff fails to state or prove her Title VII claims against WGMA as her employer and they must be dismissed.

**Title VII Gender Discrimination Claims Against Ceres**

The Court notes that Title VII prohibits discrimination in employment decisions on the basis of sex or gender. 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff alleging gender discrimination, must show (1) that she is a member of a protected class, (2) that she was qualified for the position sought, (3) that she was subject to an adverse employment action, and (4) that she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class. *Haire v. Board of Sup'rs of Louisiana Statue Univ.*, 719 F.3d 356, 363 (5th Cir. 2013). Demotions and terminations are adverse employment actions. *Id.* at 364. If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Grimes v. Wal-Mart Stores, Texas, LLC*, 505 Fed. Appx. 376, 379 (5th Cir. 2013). Once the employer has done so, the Plaintiff must show that the employer's articulated reason is a pretext for discrimination, either by showing that the reason is untrue, or if true, only one of the reasons for the adverse action being taken and the other reason is the plaintiff's protected characteristic. *Id.* at 379, 380.

**1. Defendants**

Defendants argue that Anglin cannot establish a *prima facie* claim of gender discrimination because of her failure to allege and inability to prove any adverse employment action against her by Ceres nor establish that she was replaced by or treated less favorably than a male co-worker. Instead she makes conclusory allegations that fail to raise a genuine issue of material fact. Defendants urge that the evidence actually shows that Ceres and ILA agreed to treat her more favorably than is required by the CBA—vis a vis other workers, in accommodating her alleged medical condition. Egmon Decl. at ¶8.[15]

## 2.  Plaintiff

Plaintiff states that she suffered an adverse action when (1) she received a thirty-day nonreferral for using the company truck when males were not punished; (2) she was not permitted to take breaks while working in the heat, while her male

---

[15] Paragraph 8 of Egmon's Declaration states,

At the end of August, 2009, Ms. Anglin experienced medical problems that she claimed limited her ability to work outside. I helped coordinate a series of meetings in order to determine what jobs Ms. Anglin could perform. This culminated in a meeting in which Ceres Gulf gave Ms. Anglin preferential treatment compared to other clerks working off the board. Ms. Anglin could not work the hours required of a regular clerk because her medical condition limited her to certain jobs that were not available on a daily basis. Local 1351 was at the meeting and agreed to allow Ms. Anglin to receive preferential treatment compared to other workers who were not regular employees in order to accommodate Ms. Anglin's medical condition. Ms. Anglin has never requested a grievance to contest that decision.

counterparts were; (3) she was demoted as a Clerk Working Ship
when one male with less seniority and one with fewer
qualifications were allowed to maintain their position as Clerk
Working Ship; and (4) she was terminated on the claim there was
not enough work for her, but males who were not regular employees
were called off the board and were less qualified than senior male
workers who kept working as CWS.

**3. Court's Decision**

Regarding Anglin's Title VII gender discrimination claim
against Ceres based on the treatment of other employees who used
company trucks when they were not working, as noted the fourth
prong of a *prima facie* case of discrimination requires a showing
that the plaintiff was either replaced by someone outside the
protected group or treated less favorably than other similarly
situated employees not in the protected class. *Fahim v. Marriott
Hotel Servs.*, 551 F.3d 344, 350 (5 th Cir. 2008).  In disparate
treatment cases, such as this one, the plaintiff must show nearly
identical circumstances for employees to be considered similarly
situated.  *McGarry v. Univ. of Mississippi Medical Center*, 355
Fed. Appx. 853, 857 (5th Cir. 2009).  The Fifth Circuit defines
"similarly situated" narrowly. *Silva v. Chertoff*, 512 F. Supp.
2d 792, 803 n.33 (W.D. Tex. 2007).[16]   Similarly situated

---

[16] District Court Judge Montalvo in *Silva* listed the
following examples in n.33:

> *Wheeler [v. BL Dev. Corp.*, 415 F.3d 399, 406
> (5th Cir. 2005)], (finding insufficiently
> identical circumstances where the terminated
> white plaintiff and a black manager who

remained employed had the same supervisor,
were both company directors, and were both
accused of removing company assets at
relatively the same time; the Court of
Appeals noted that the white plaintiff lied
repeatedly during the course of the company's
investigation, while the black employee
admitted her actions; in addition, the value
of the property the black employee removed
was "dramatically less" than the property the
white plaintiff removed); *Mayberry [v. Vought
Aircraft Co.*, 55 F.3d 1086, 1090 (5ᵗʰ Cir.
1995)](finding that the plaintiff had not
shown "nearly identical" circumstances merely
because he produced evidence that white and
black employees in the same position had
scrapped parts due to the employer's operator
error or poor workmanship, but were not
disciplined; the plaintiff had not shown that
the undisciplined employees had, like him, a
history of poor work performance and scrapped
parts damage amounting to $8,000); *Little v.
Republic Refining Co.*, 924 F.2d 93, 97 (5ᵗʰ
Cir. 1991)(concluding that the plaintiff had
not shown "nearly identical" circumstances
because the employee outside the plaintiff's
protected class who allegedly received more
favorable treatment did not have the same
supervisor); *Smith v. Wal-Mart Stores (no.
471)*, 891 F.2d 1177, 1180 (5ᵗʰ Cir.
1990)(determining that the plaintiff and the
employee outside her protected class who
allegedly received preferential treatment
were not similarly situated where the
employer discharged the plaintiff because the
plaintiff violated its non-fraternization
policy and the other employee's conduct did
not involve the employer's non-fraternization
policy). "[P]ut another way, the conduct [or
circumstances] at issue is not nearly
identical when the difference between the
plaintiff's conduct [or circumstances] and
that of those alleged to be similarly
situated accounts for the difference in
treatment received from the employer."
*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d
296, 304-05 (5ᵗʰ Cir. 2000)(finding that the
"striking differences" between the
plaintiff's and purportedly similarly
situated employees outside the plaintiff's

individuals must be "nearly identical" and must fall outside the plaintiff's protective class, here female. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). Where different decision makers or supervisors are involved, their decisions are rarely "similarly situated" in relevant ways for establishing a *prima facie* case. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971 (E.D. Tex. 2004), *citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) for the proposition that "[a] demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making"). *See also Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004)("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"); *Hockman v. Westward Communications, LLC*, 282 F. Supp. 2d 512, 527-28 (E.D. Tex. 2003)("The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard-- employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'"), *citing Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001)(Employees are not in nearly identical circumstances when their actions were reviewed

---

protected class "more than account[ed] for the different treatment they received.").

by different supervisors; "to establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to [] [another] employee under 'nearly identical' circumstances' . . .; that is "the misconduct for which [plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].'"")).

First, the Court notes that Plaintiff has not even named the allegedly similarly situated male coworkers who purportedly drove company trucks when they were not working and did not suffer the alleged retaliatory actions (thirty days of non-referral and ultimately an alleged type of constructive discharge as a regular employee) that she claims she experienced.  More importantly, nor did Anglin provide any details, no less evidence, about these individual and their supervisors to demonstrate that they were "similarly situated" to her.

The same is true of her complaint that she was assigned to less desirable jobs, given fewer working hours, was forced to work in the heat, and refused breaks, jeopardizing her health, unlike her unnamed and undescribed male "counterparts."

Nor does she allege any facts, no less provide any evidence, to support her complaint that Chief Clerk Wayne Kocurek said to Randy Weiskopf, "You don't tell her nothing–you don't teach her nothing," constituted *gender* discrimination.

Anglin's conclusory claim that because she was named as a witness in a lawsuit against a company that was not her employer, she was demoted and replaced by Oliphant, a less senior,

male employee, is an isolated event and the sole instance alleged of her replacement by a male during all the years she worked for Ceres.  She presents **no** evidence that this demotion was based on her gender.  Indeed her express allegations regarding that replacement and alleged demotion related to retaliation, not gender discrimination.

**Hostile Work Environment Claim Against Ceres**

**1.  Defendants**

Defendants rely on their contention that there was no evidence of gender discrimination and do not address Plaintiff's hostile work environment claim.

**2.  Plaintiff**

Plaintiff appears to rely on, as an alleged pattern of harassment based on her gender, the alleged individual discriminatory incidents that she has pleaded:  being replaced by a less senior male employee, Oliphant, who could not do the job; the offensive sex-based telephone message; being forced to work in the heat without breaks while her unidentified male counterparts, who worked off the board, were permitted to take breaks and were relieved on a regular basis (and other workers talked openly over the company phones about their breaks, a claim not pleaded); and being given a 30-day referral for using a company truck to pick up her belongings when other unidentified male workers were not.

**3.  Court's Decision**

"'The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination.'" *EEOC v. Boh Brothers Construction Co., LLC*, ___ F.3d ___, No. 11-30770, 2013 WL 5420320, at *4 (5th Cir. Sept. 27, 2012)(*en banc*), *quoting Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2455 (2013)(Thomas, J., concurring).

The elements of a sexually hostile work environment claim are (1) the plaintiff belongs to a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on the plaintiff's gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Roberts v. Unitrin Specialty Lines, Ins. Co.*, 405 Fed. Appx. 874, 880 (5th Cir. 2010), *citing Mota v. Univ. of Tex. Hou. Health Sci. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2001). To prevail on a hostile work environment claim Anglin must prove that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), *quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986); *see also Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009), *quoting Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). "[I]solated incidents (unless extremely serious) will not amount to discriminatory charges in the 'terms and conditions of

employment.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  The court must look at "all the circumstances," including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  To be actionable, the hostile environment must be both objectively and subjectively sexually offensive, "objectively offensive meaning that a reasonable person would find it hostile and abusive, and subjectively offensive meaning that the victim perceived it to be so.".  *Id.* at 21-22; *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).  "[S]imple teasing, offhand comments, and isolated incidents" do not constitute actionable harassment "unless extremely serious."  *Faragher*, 524 U.S. at 788 ("Title VII does not become a 'general civility code'" and the "standards for judging hostility are sufficiently demanding" that proper application will "filter out complaints attacking the ordinary tribulations of the work place, such as sporadic use of abusive language, gender-related jokes, and occasional teasing.").

The Court finds that Anglin has failed to produce any summary judgment evidence, beyond her own subjective belief,[17] that Ceres created or permitted a hostile work environment based on

---

[17] "'[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.'"  *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

gender.  *Gibson v. Verizon Services Organization, Inc.*, 498 Fed. Appx. 391, 394 (5th Cir. Nov. 15, 2012).  Conclusory allegations, speculation and unsubstantiated allegations will not satisfy Anglin's burden as nonmovant in a motion for summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

It is significant that Plaintiff does not allege or identify any harassment of any other female employees of Ceres, but focuses only on herself.

The Court has previously explained why Plaintiff's claim of retaliation based on being named as a witness in a lawsuit against a party not her employer fails to state a claim against Ceres for which relief can be granted under Title VII.

Although she conclusorily claims she was treated differently from male workers employed by Ceres, as noted she provides no names, no dates, and no details of these vaguely referenced incidents to show favorable treatment of "similarly situated" male employees to support her conclusory allegations or to show that the incidents formed a "pattern" of harassment.

The single offensive statement identified by Plaintiff as based on sex, i.e., the message left on the company phone, was not directed to her individually, but left on a company phone to which many employees had access, was not physically threatening or personally humiliating, and thus not objectively hostile or abusive nor extremely serious harassment in view of the totality of the circumstances.  Moreover Anglin does not allege, no less show, that it unreasonably interfered with her work performance

and undermined her workplace competence.  Thus the call is insufficient to rise to the level of "severe or pervasive" harassment to support a claim of hostile work environment.[18]  Nor has she alleged, no less shown, that anyone else with access to the message complained about it.

Moreover, "[w]hen a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant. the company may avoid Title VII liability." *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 329 (5th Cir. 2004).  "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.*  Ceres has shown that it did take prompt remedial action and placed the alleged offender on non-referral status while it investigated,[19] but that its investigation ultimately determined that the alleged offender was not responsible; Plaintiff has failed to show that he was.  *See*, #79-1, Egmon Decl. at ¶ 7, Ex. 1.  See also footnote 5 of this Opinion and Order.  Importantly, Anglin has not alleged that the phone harassment continued or that the alleged offender continued with any kind of harassment. Moreover, as noted in footnote 5, Defendants have produced evidence that asserts that even though WGMA sent Plaintiff numerous letters explaining the grievance and

---

[18] *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004)

[19] Under Title VII an employer is only liable for harassment of the plaintiff by her co-worker if  the employer was negligent in controlling the working conditions. *E.E.O.C. v. Boh Bros. Const. Co.*, ___ F.3d ___, No. 11-30770, 2013 WL 5420320, at *4 (5th Cir. Sept. 27, 2013).

arbitration procedures for any harassment or discrimination claim, Anglin did not provide any information to Ceres, WGMA, and the local union facilitator to aid in the investigation of her claim, did not appear at the May 6, 2009 grievance (or any subsequent meetings postponed to allow her time to find an attorney), and never identified any other incident beside the single offensive phone call (*id.* at ¶ 5, Ex. 1). Moreover, Plaintiff has not controverted the content of Egmon's Declaration.

Thus the Court finds that Anglin fails to state, no less provide summary judgment evidence to support, a claim for hostile work environment.

**Title VII Retaliation Claim Against Ceres**

**1.  Defendants**

Defendants focus on one element of a *prima facie* case of retaliation, i.e., that the plaintiff engaged in an activity protected by Title VII. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Merely being identified as a witness in a Title VII complaint is not a protected activity, and Anglin does not allege, no less show, that she actually participated in a protected activity "in an investigation or hearing," as required for retaliation claims. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any member . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

On the other hand, Defendants present summary judgment evidence showing that no charges of discrimination were filed against Ceres by an ILA worker in Texas, and there was no grievance, charge of discrimination, or investigation of a complaint of discrimination or harassment by someone other than Plaintiff in which Plaintiff testified or was identified as a witness. Declaration of Chelsea Egmon, Vice President of Labor Relations WGMA and custodian of the collective bargaining agreements between WGMA and the union, and responsible for coordinating the hearings associated with grievances filed by union locals, #79-1.

## 2. Plaintiff's Response

Plaintiff claims she engaged in at least four "protected" activities: (1) being identified as a witness in a Title VII complaint against another employer, resulting in her demotion from CWS to Timekeeper, and after her complaint about that demotion while still being required to do Oliphant's paperwork, she was moved to CIC of the yard; (2) her complaint about the sexually offensive telephone call on a company phone used by males and females, after which she was forced to work in the heat and refused breaks, jeopardizing her health, unlike uncomplaining workers, primarily males, who were relieved whenever they needed to be; (3) her complaint that she was treated differently than her male counterparts when in retaliation she was not allowed to take breaks, resulted in her removal as CIC of the yard to working in the heat; and (4) her complaint that she was

assigned less desirable jobs than less senior males and was provided fewer work hours than regular male employees, resulting in her assignment to jobs in the heat, health problems, and ultimately termination as a regular employee based on the pretext that Ceres did not have enough work for her (Transcript of Injunction Hearing, 86:20-101:19), while males who were not regular employees were called off the board and less qualified and senior males kept working. Anglin adds that her thirty-day non-referral for using a company vehicle to retrieve her personal effects, when male employees using company trucks were not punished, was retaliatory and discriminatory.

Anglin identifies five purported causal connections between her protected activity and adverse employment actions: (1) temporal proximity between her complaints and the retaliatory adverse employment actions; (2) the CBA restricted Ceres' ability to change her hours and her position, i.e., she could only be released for a valid reason and as a regular employee, she was supposed to get preferential treatment for jobs over union members who worked "off the board" (Injunction Hearing Transcript, 91:6-9); (3) comments from employees that Ceres wanted her gone because of her complaints[20]; (4) comments from a WGMA grievance judge bragging about WGMA's ability to "non-refer" union members who complain about employment practices[21]; and (5) "if you get rid of

---

[20] Anglin does not identify the employees or the comments.

[21] Anglin not only fails to show that WGMA was her "employer" under Title VII, but also fails to show that it played

the employer['] s proffered reason for its actions, then the most likely reason is retaliation in violation of Title VII" under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

### 3. Court's Decision

To assert a claim of retaliation under Title VII, 42 U.S.C. § 2000-3(a), a plaintiff with only circumstantial evidence must satisfy the burden-shifting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First the plaintiff must make a *prima facie* case of retaliation that meets three elements: (1) the employee engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County, Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004), *cited for that proposition in Cooper v. Dallas Police Assoc.*, 278 Fed. Appx. 318, 320 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1912 (2009). *See also McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but-for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005), *cited for that propositions,*

---

any role in any of these alleged retaliatory actions. Anglin provides no details about the WGMA judge's statement or to connect it to complaints that her demotion or job assignment or Ceres' failure to provide her with forty-hour work weeks constituted retaliation.

*Gliddens v. Community Educ. Centers, Inc.*, ___ Fed. Appx. ___, No. 12-51050, 2013 WL 5405503, at *6 (5th Cir. Sept. 27, 2013).

The statute defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a). "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). Furthermore the anti-retaliation provision of Title VII does not protect an employee from all retaliation, but only from retaliation that produces an injury or harm. *Burlington Northern*, 548 U.S. at 67.

An "adverse employment action," for the second prong, in a retaliation claim only, is not limited to the Fifth Circuit's previous "ultimate employment decision" standard for discrimination claims under the statute. The Supreme Court has held that "the standard for retaliation is broader than for discrimination" in that such actions are not limited to tangible employment actions. For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa*

*Fe Ry. Co.*, 548 U.S. 53, 68 (2006).[22]  *See also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)(same)(*quoting Burlington N.*, 548 U.S. at 68).  "To constitute prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'  The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Stewart*, ___ F.3d at __ , 2009 WL 3366930, at *7*, citing Burlington N*, 548 U.S. at 68.

If the plaintiff succeeds in making a *prima facie* case of retaliation, a presumption of discrimination arises, and the burden shifts to the defendant employer, to provide a legitimate, nonretaliatory reason for the adverse employment action.  *Hockman*

---

[22] As the Fifth Circuit explained in *Bouvier*, 2009 WL 3444765, at *3 n.2,

> The Supreme Court has held that Title VII's anti-retaliation provisions prohibit more conduct than its anti-discrimination provisions. *See Burlington Northern*[, 548 U.S. 53]. Expressly limiting its holding to retaliation claims, the Supreme Court abrogated the "ultimate employment [decision] test" and held that employees must show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 67. However, in the Fifth Circuit the "ultimate employment test" still applies to cases alleging discrimination. *See McCoy [v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007] ("In *Burlington Northern*, the Court expressly limited its holding to Title VII *retaliation* claims . . . ."(emphasis in the original).

*v. Westward Communications LLC*, 407 F.3d 317, 330 (5th Cir. 2004), *cited for that proposition in Cooper*, 278 Fed. Appx. at 320.  If the employer succeeds, under the *McDonnell Douglas* framework the presumption of discrimination falls away and the plaintiff must show that the employer's articulated reason for its action is merely a pretext for retaliation, or if true, is only one reason for its conduct and another motivating factor is plaintiff's protected characteristic.  *Cooper*, 278 Fed. Appx. at 320, *citing McDonnell Douglas*, 411 U.S. at 804; *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).  The plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.  *McCoy*, 492 F.3d at 557.  The plaintiff can show pretext "by showing that the employer's proffered  explanation is false or 'unworthy of credence.'"  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), *quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143.  For example, Plaintiff could show that she is clearly better qualified than the person who got the job, promotion, raise, etc.,[23] or that the employer's articulated reason is false by showing inconsistency in the employer's explanations at different times.  *Burrell*, 482 F.3d at 412, *citing Celestine v. Petroleos de*

---

[23] "However, the bar is set high for this kind of evidence because differences in qualification are generally not probative evidence of discrimination unless those disparities are 'of such a weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine*, 266 F.3d at 357, *quoting Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999).

*Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001), and *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)("a factfinder may infer the ultimate fact of retaliation by the falsity of the explanation"). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and thereby preclude summary judgment. *Reeves*, 530 U.S. at 135.

The Court agrees with Defendants that as a matter of law Anglin fails to state a *prima facie* case of retaliation, no less provide evidence of one, against Ceres based on Anglin's being named as a witness in a lawsuit against a different employer. That conclusory allegation combined with the purported threatening statement of the unidentified superintendent of the unnamed defendant company, which was not her own employer, while clearly a pleading deficiency under Rule 12(b)(6), cannot constitute a "protected" action under Title VII, 42 U.S.C. § 2000e-3(a). She does not allege, no less demonstrate, that she testified, assisted or participated in any investigation, proceeding or hearing in that suit. Nor does Plaintiff allege, no less show, that the remark by an unidentified superintendent of the defendant would or did reasonably dissuade her from testifying against an unidentified company or that all stevedoring companies in Houston did blacklist her or that she reasonably feared they would. Thus the charge will not support a claim of retaliation against Ceres.

Moreover, although Anglin conclusorily states that Ceres

learned about her being named a witness in the suit, Plaintiff
fails to allege any facts or provide any summary judgment evidence
showing if, how, or when Ceres learned about it, or why the naming
of Anglin as a witness in a lawsuit against another entity would
and did motivate Ceres to retaliate against her.

Moreover, even if she could have presented evidence of
these matters, Anglin fails to establish causation for any of her
retaliation claims.  The Fifth Circuit has held that temporal
proximity between the protected activity and the alleged adverse
employment action, by itself, is insufficient to create a genuine
issue of material fact for the element of causation.  *DeHart v.*
*Baker Hughes Oilfield Operations, Inc.*, 214 Fed. Appx. 437, 443
(5th Cir. 2007)(collecting cases on temporal proximity).  Such
temporal proximity must be coupled with other evidence showing a
retaliatory motive.  *McCoy*, 492 F.3d at 562.  Close timing between
the protected activity and the adverse employment action may,
however, be a significant, if not a determinative factor.
*Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (1995).  Where
temporal proximity may support an inference of retaliation, "the
proximity must be very close."  *Gibson v. Verizon Services*
*Organization, Inc.*, 498 Fed. Appx. 391, 397 (5 [th] Cir. Nov. 15,
2012), *citing Clark County Sch. Dist. v. Breeden*, 532 U.S. 268,
273 (2001).[24] Although temporal proximity between the protected

---

[24] The Fifth Circuit has found five months between the
protected activity and the adverse action too long to infer
retaliation.  *Id., citing Raggs v. Miss. Power & Light Co.*, 278
F.3d 463, 471-72 (5th Cir. 2002).  In *Evans v. Houston*, 246 F.3d
344, 354 (5th Cir. 2001) it found that "a time lapse of up to four

- 37 -

activity and an adverse employment action may be enough of a "causal connection" to establish a *prima facie* case, "once an employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy*, 492 F.3d 562.

Thus even if Anglin's being named in the lawsuit against a different employer were legally sufficient to trigger retaliation under Title VII against her by Ceres, Plaintiff fails to identify when Ceres purportedly learned about her being named as a witness in the lawsuit so that she could demonstrate causation based on temporal proximity for her claim in her demotion for CIC and CWS to Timekeeper.

Regarding her complaints about other aspects of her employment at Ceres, she alleges activities presented by Title VII and adverse actions taken by Ceres against her. For Anglin's conclusory claim that Ceres retaliated against her for complaining about the message on the company telephone by forcing her to work in the heat without breaks or relief, Anglin provides no evidence of a causation connection.  [25]  Nor does Anglin provide any

---

months" may be close enough to support temporal proximity.

[25] Although the Court concludes that Anglin failed to present a *prima facie* case of retaliation under the statute and thus does not reach the issue, Ceres presents uncontroverted evidence that it promptly addressed her complaint about the matter and that Plaintiff failed participate in the investigation or to pursue her claim. See footnote 5 of this Opinion and Order.  Where an employer has "provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available

supporting details, no less evidence, of a causation connection between her complaints and the remaining assertions of retaliation.

**Conspiracy**

**1. Defendants**

Plaintiff has alleged that Defendants conspired to deny Plaintiff her rights under Title VII.  Defendants argue that the conspiracy claim fails as a matter of law because under Texas common-law civil conspiracy is not an independent cause of action, but a derivative tort; there must be an underlying wrong and the plaintiff must plead facts supporting a claim that at least one of the defendants is liable for that underlying tort.  *Tilton v. Marshall*, 925 S.W.3d 672, 681 (Tex. 1996).

Defendants further insist that even if Anglin could bring a conspiracy claim, there is no evidence to support the elements of such a claim.  The elements of civil conspiracy in Texas are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as a proximate result.  *Tri v. J.T.T.*, 152 S.W. 3d 552, 556 (Tex. 2005).  Anglin has not and cannot show that the "object" of this combination of Defendants was to commit an unlawful act or to accomplish an unlawful purpose.  Anglin has not alleged and cannot

---

to the employee without risk or expense," and the plaintiff "unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . . no liability should be found against the employer who has taken reasonable care." *Faragher*, 524 U.S. at 807.

prove that Ceres, WGMA or any other member of the alleged conspiracy committed an unlawful overt act in furtherance of the conspiracy.

Furthermore Title VII, with its "detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims," as a matter of law cannot serve as the basis for a federal statutory conspiracy cause of action under 42 U.S.C. § 1985(3), the federal statute for conspiracy to violate federal civil rights, which provides no substantive rights, but only a remedy, and which might be used to bypass the statute's administrative process. *See Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 367 (1970)(A claim for employment discrimination under Title VII cannot form the basis for a conspiracy claim under 42 U.S.C. § 1985(3) because "i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of the detailed and specific provisions of Title VII."); *Irby v. Sullivan*, 737 F.2d 1418, 1428-29 (5th Cir. 1984)(*Great American* "compels the conclusion that Title VII provides the exclusive remedy for violations of the terms of Section 704(a) of that Act," given Title VII's comprehensive remedial scheme which reflects congressional intent that its remedies be exclusive).

## 2. Plaintiff

Anglin argues that the cases cited by Defendants, *Great American Federal Savings & Loan* and progeny, only make clear that a plaintiff cannot use a different federal statute to circumvent

the remedial process and limits imposed on litigants under Title VII.  She claims she is not circumventing Title VII, "but bringing a conspiracy based on Defendants' violations of Anglin's rights under Title VII--which can be the basis of a conspiracy claim." #80 at p. 18.

**3.  Court's Decision**

Plaintiff fails to cite a single case in which a plaintiff was permitted to pursue, no less prevailed on, a common-law civil conspiracy claim that defendants conspired to violate a plaintiff's rights under Title VII, and the Court knows of none. Title VII remains a comprehensive statute with an exclusive remedial scheme, and the reasoning of *Great American* remains applicable and persuasive to preclude a derivative common-law conspiracy cause of action.

Even if it were permissible to do so, the Court agrees with Defendants that not only has Plaintiff failed to provide any evidence demonstrating the elements of a conspiracy among Defendants under Texas law, but under Federal Rule of Civil Procedure 12(b)(6) she has failed to state a claim for one.  She alleges no facts showing a "meeting of the minds" of Defendants on an illegal "object to be accomplished," nor an intention to bring it about, nor any overt act, but merely parrots the boilerplate elements of the cause of action.  She conclusorily asserts that "Defendants came together . . . to deny Ms. Anglin her Title VII rights."  #60 at 18.  Moreover, if Plaintiff fails to make a showing of a violation of Title VII sufficient to raise

- 41 -

a genuine issue of material fact for trial, her derivative conspiracy claim fails, too.  Thus Defendants should be granted summary judgment on Anglin's claim that they conspired to violate her rights under Title VII.

Accordingly, because Plaintiff fails to allege necessary facts to state a claim, no less to provide evidentiary support for key elements of the Title VII claims, the Court

ORDERS that Defendants' motion for summary judgment of Plaintiff's Title VII and related conspiracy claims (#79) is GRANTED.

**SIGNED** at Houston, Texas, this  18th  day of  December, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE